*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THOMAS MICHAEL PETERSON,

        Defendant-Appellant.

UNPUBLISHED
September 10, 2020

No. 344705
Wayne Circuit Court
LC No. 17-000306-01-FC

Before: JANSEN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, reckless driving causing death, MCL 257.626(4), first-degree fleeing or eluding a police officer, MCL 257.602a(5), operating a motor vehicle while intoxicated (OWI) causing death, MCL 257.625(4), and reckless driving causing serious impairment of a bodily function, MCL 257.626(3). The trial court sentenced defendant to concurrent prison terms of 40 to 60 years for the murder conviction, 10 to 15 years each for the reckless driving causing death, fleeing or eluding, and OWI convictions, and three to five years for the reckless driving causing serious impairment of a bodily function conviction. Because we conclude that trial counsel was ineffective for failing to request a jury instruction on involuntary manslaughter as a lesser offense of second-degree murder, we reverse defendant's conviction and sentence for second-degree murder and remand for a new trial on this offense. We affirm defendant's remaining convictions and sentences. This appeal is decided without oral argument. MCR 7.214(E)(1)(b).

## I. BASIC FACTS

Defendant was convicted of causing the death of Nicole Cutting and injuring two other motorists and their passengers as a result of his reckless driving, while fleeing the police, in the late afternoon of August 2, 2016, in Brownstown Township. The prosecution presented evidence that after defendant's female companion committed retail fraud at a local Meijer store, she fled the store and entered the passenger seat of a Ford F-150 black truck that defendant was driving. A responding police officer observed the suspect vehicle, saw it enter an expressway where there was heavy traffic, and ultimately engaged its lights and siren. As the officer navigated the

congested traffic, he at one point had a "clear view" of the truck with no traffic between them, but he was unable to catch up before the truck left the middle lane, drove onto the shoulder, and exited the expressway. Near the exit, a witness saw the truck speed past her, nearly clipping the front of her car, and disregard a red traffic light. Minutes later, that witness and the officer who had exited the expressway in search of the black truck observed the same truck after it had been involved in a major accident near an intersection. According to the testimony, defendant's truck hit Cutting's car, causing it to flip over, and Cutting suffered fatal injuries. After being hit by defendant, Cutting's car hit a car occupied by Jacob Hunter and Alyssa Stewart, who were both injured. Mary Pilon and Andrea Thompson occupied a different vehicle, which defendant's truck hit after hitting Cutting's vehicle, and both women also suffered injuries.

The prosecution presented expert testimony that defendant caused the accident by disregarding a stop sign at the intersection; his "speed was too fast to either turn left or right, and he continued straight, through the intersection." There was also evidence that a urinalysis performed at the hospital after the accident revealed that defendant had cocaine and opiates in his system. At trial, the defense conceded that defendant drove recklessly, fled and eluded the police, and operated his vehicle while under the influence, but argued that there was no evidence that he had the intent necessary to establish his guilt of second-degree murder. The jury convicted defendant on all counts as charged.

After defendant filed his claim of appeal, this Court granted defendant's motion to remand to allow defendant to seek a new trial on the basis that trial counsel was ineffective for (1) conceding defendant's guilt to four of the five charges during opening statement and closing argument, (2) failing to request a jury instruction on involuntary manslaughter as a lesser offense of second-degree murder, (3) failing to move to suppress the urinalysis report, and (4) failing to consult and call an accident reconstruction expert. *People v Peterson*, unpublished order of the Court of Appeals, entered May 20, 2019 (Docket No. 344705). On remand, following an evidentiary hearing, the trial court denied defendant's request for relief.

## II. SUBSTITUTE COUNSEL

Defendant first alleges that the trial court abused its discretion by refusing to appoint substitute counsel, and by failing to adequately investigate the nature of defendant's allegations of a breakdown in the attorney-client relationship. We disagree. We review a trial court's decision regarding substitution of counsel for an abuse of discretion. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*.

"An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced." *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001) (citation omitted). "Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *Id*. "Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest." *People v McFall*, 309 Mich App 377, 383; 873 NW2d 112 (2015) (quotation marks and

citations omitted). Conversely, "[a] mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *Strickland*, 293 Mich App at 398. When a defendant alleges a breakdown in the attorney-client relationship, the trial court should inquire into the allegations, but "a defendant's conviction will not be set aside, even in the absence of judicial consideration of the defendant's allegation, if 'the record does not show that the lawyer assigned to represent [the defendant] was in fact inattentive to his responsibilities.' " *People v Buie (On Remand)*, 298 Mich App 50, 67; 825 NW2d 361 (2012) (citation omitted). Disagreements with regard to trial strategy or professional judgment do not warrant appointment of substitute counsel. *Strickland*, 293 Mich App at 398. Counsel was not required to file a futile motion. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Preliminarily, we disagree with defendant's claim that the trial court did not adequately inquire into defendant's reasons for his dissatisfaction with defense counsel. At the final conference and on the first day of trial, the trial court gave defendant an opportunity to place his complaints about defense counsel's alleged inadequacies on the record. At the final conference, after hearing and addressing defendant's complaints, the trial court asked if there was "[a]nything else you have to say[.]" On the first day of trial, the court observed that defendant was raising the same issues that he had previously raised, but invited defendant to expound on any new issues. Therefore, the trial court was aware of defendant's complaints regarding counsel.

Further, defendant has failed to demonstrate good cause for the appointment of substitute counsel. When given the opportunity by the trial court, defendant expressed dissatisfaction with defense counsel citing the little communication they exchanged before trial, counsel's failure to provide him the felony information and "Magistrate return," and counsel's failure to file motions that defendant had requested. Even if defense counsel did not communicate with defendant as much as defendant would have preferred, defendant admitted that counsel visited him in jail and spoke at court hearings, which is contrary to defendant's statement that there was "no communication." Also, defendant indirectly acknowledged communicating with counsel through his request for information and his ongoing complaint that counsel was not following his instructions regarding the filing of motions.

Although defense counsel failed to file the requested motions, defendant filed the motions himself and counsel argued the motions before trial with defendant invited to comment on the issues. The trial court then denied defendant's motions for change of venue, judicial disqualification, and for the appointment of an investigator, but granted defendant's motion for discovery of any written notes by the Meijer loss prevention officer, if they existed. Defendant does not address the propriety of the trial court's rulings nor does he explain how notes from the Meijer loss prevention officer, if they existed, were pertinent. Consequently, counsel's decision whether to file the motions that defendant suggested, which either were not successful or outcome-determinative, was a matter of trial strategy, and the disagreement with regard to trial strategy did not warrant appointment of substitute counsel. *Strickland*, 293 Mich App at 398. Thus, defendant's complaint pertaining to motions did not establish good cause for substitution of counsel.

Regarding defendant's alleged ignored requests for certain information, defendant acknowledged that defense counsel had provided him "all of the discovery." He could not explain the meaning of his request for a "Magistrate return," but agreed that he wanted a copy of the felony information. Counsel agreed to provide that document and noted that defendant previously received the complaint. Defendant's remaining complaints, e.g., "there's no help from him," "he's not representin' me properly," and "he's doin' nothin' for me," lacked specificity, and thus did not demonstrate a difference of opinion with regard to a fundamental trial tactic. Despite these blanket allegations, the record demonstrates that defense counsel was prepared for trial, was fully aware of the facts of the case, cross-examined the prosecution witnesses, and challenged the intent element of second-degree murder. Defendant failed to show either good cause or actual prejudice, and, consequently, the trial court did not abuse its discretion by denying defendant's request for a new attorney.

## III.  SUFFICIENCY OF THE EVIDENCE

Defendant asserts that the prosecution failed to present sufficient evidence to prove his guilt of second-degree murder, reckless driving causing death, first-degree fleeing or eluding a police officer, and reckless driving causing serious impairment of a bodily function. Again, we disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, we must view the evidence in a light most favorable to the prosecution and determine whether a rational tier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## A.  SECOND-DEGREE MURDER

The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). Defendant argues only that the prosecution did not prove beyond a reasonable doubt that he acted with the malice necessary to establish second-degree murder. "Malice is defined as 'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.' " *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation omitted). Malice may be inferred from facts in evidence. *People v Bulls*, 262 Mich App 618, 627; 687 NW2d 159 (2004). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind[.]" *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Viewed in a light most favorable to the prosecution, the evidence showed that defendant, after ingesting cocaine and opiates, drove his truck, essentially as a getaway driver, at high rates of speed on the shoulders of an expressway and then a roadway to elude the police, disregarded a red traffic light as he nearly hit a car, and ultimately disregarded a stop sign before driving into an

intersection and causing the death of one person and injuring four others. This evidence was sufficient to permit a rational trier of fact to infer beyond a reasonable doubt that defendant acted with a wanton and willful disregard of the likelihood that the natural tendency of his behavior was to cause death or great bodily harm. *Werner*, 254 Mich App at 531. In addition, expert testimony that defendant had time to stop before the intersection, but instead attempted to only slow down in order to turn, which led to the fatal collision, further supports a finding of malice.

Defendant argues that the evidence was insufficient to sustain his conviction because the jury should have relied on the prosecution's expert testimony that defendant attempted to brake before the impact and intended to safely proceed at the intersection, but "just had too much speed." However, when evaluating the sufficiency of evidence, this Court is required to resolve all conflicts in the evidence in favor of the prosecution. *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012). Defendant's challenges are related to the weight of the evidence rather than its sufficiency. *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). Indeed, the jury heard the expert's testimony, which also included the testimony that defendant did not intend to stop, and we will not interfere with the trier of fact's role of determining issues of weight and credibility. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). The prosecution presented sufficient evidence to support defendant's conviction of second-degree murder.

## B. FIRST-DEGREE FLEEING OR ELUDING

Defendant contends that there was insufficient evidence to support this conviction because evidence that a police officer ordered him to stop his vehicle or intended to effectuate a traffic stop was lacking. We again disagree.

MCL 257.602a provides, in relevant part:

> (1)    A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer . . . .
>
> * * *
>
> (5)    If the violation results in the death of another individual, an individual who violates subsection (1) is guilty of first-degree fleeing and eluding, a felony punishable by imprisonment for not more than 15 years or a fine of not more than $10,000.00, or both.

Contrary to defendant's assertion, Woodhaven Police Officer Ryan Smith testified that after seeing defendant's black truck merge onto the expressway, he followed and eventually used his lights and sirens to cause cars to move as he tried to proceed closer to the truck. After driving for approximately one mile, the officer had a "straight line of sight" and a "clear view" of the truck, his lights and sirens were activated, and there was no traffic between defendant's vehicle and the officer's patrol car. At that point, defendant, who was traveling faster than the officer, moved from the middle lane onto the shoulder, in an apparent effort to pass the cars in front of him, and he "left

the [officer] in the dust." A jury could reasonably infer from the evidence that the officer's patrol car was behind defendant's truck, with no traffic between them, with the lights and sirens engaged. Accordingly, defendant had both an audible and visual direction to stop, and his prompt action of driving from the middle lane onto the shoulder and then exiting the expressway showed that he willfully disobeyed that direction. See MCL 257.602a(1). Thus, viewed in a light most favorable to the prosecution, there was sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that defendant was given a signal to stop and failed to do so, thus supporting his first-degree fleeing or eluding conviction.

## C. RECKLESS DRIVING

Defendant submits there was insufficient evidence that he drove with willful or wanton disregard for the safety of other persons to satisfy his convictions of reckless driving causing death, MCL 257.626(4), and reckless driving causing a serious impairment of a bodily function, MCL 257.626(3). We disagree.

MCL 257.626 provides, in relevant part:

(1) A person who violates this section is guilty of reckless driving punishable as provided in this section.

(2) Except as otherwise provided in this section, a person who operates a vehicle upon a highway . . . or other place open to the general public, including, but not limited to, an area designated for the parking of motor vehicles, in willful or wanton disregard for the safety of persons or property is guilty . . . .

(3) Beginning October 31, 2010, a person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes serious impairment of a body function to another person is guilty of a felony . . . .

(4) Beginning October 31, 2010, a person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes the death of another person is guilty of a felony . . .

Both offenses share the relevant requirement that a person operated a vehicle on a highway "in willful or wanton disregard for the safety of persons or property." MCL 257.626(2); *People v Jones*, 497 Mich 155, 167; 860 NW2d 112 (2014). Under this standard, a defendant need not intend to cause harm, but must act with more than simple carelessness and must knowingly disregard the dangerousness of his conduct. *People v Carll*, 322 Mich App 690, 695; 915 NW2d 387 (2018).

The prosecution presented evidence that defendant, who had cocaine and opiates in his system, fled from the police while driving on the shoulder of an expressway and then a roadway at a higher rate of speed than the police, disregarded a traffic light, and ultimately disregarded a stop sign at an intersection, which caused a collision that led to the death of one victim and the serious impairment of a bodily function of another victim. This evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant knowingly operated his vehicle in

disregard for the safety of others, thereby supporting his convictions of reckless driving causing death and serious impairment of a bodily function.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that he was denied the effective assistance of counsel at trial, thereby entitling him to a new trial. We agree that counsel was ineffective for failing to request an instruction for a lesser offense of second-degree murder, warranting a new trial for this offense.

After conducting an evidentiary hearing, the trial court denied defendant's motion for a new trial on the issue of ineffective assistance of counsel. We review a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). A claim alleging ineffective assistance of counsel presents a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Questions of law are reviewed de novo, and a trial court's findings of fact are reviewed for clear error. *Id.* "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id.*

The effective assistance of counsel is presumed, and the burden is on the defendant to establish the contrary. *LeBlanc*, 465 Mich at 579; *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012). "[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *Id.* at 22-23.

## A. CONCESSION OF GUILT ON LESSER CHARGES

Defendant alleges that trial counsel was ineffective for conceding defendant's guilt of the lesser charges and attacking only the murder charge. Defendant is correct that a counsel may not concede a defendant's guilt without his consent. See *McCoy v Louisiana*, 584 US ___, ___, 138 S Ct 1500, 1505; 200 L Ed 821 (2018). In *McCoy*, the Court stated that the "[a]utonomy to decide that the objective of the defense is to assert innocence" is reserved for a defendant. *Id.* at 1508. The Court concluded that it was error for the defendant's trial counsel to disregard the defendant's desire to maintain his innocence rather than to concede guilt in an attempt to eliminate the possibility of a death penalty sentence. *Id.* at 1510-1511.

In this case, the trial court determined that defendant agreed to the strategy employed by counsel at trial. Both defendant and trial counsel testified at the evidentiary hearing. Defendant

essentially argues that the trial court should not have believed counsel's testimony that defendant was aware of, and acquiesced to, the strategy of conceding guilt to the lesser charges and attacking only the murder charge. The trial court found trial counsel's testimony to be credible, and that he was "testifying honestly" and consistent. Conversely, the court found that defendant's testimony was not credible "on the substantive issues before the Court." This Court gives deference to a trial court's superior ability to judge the credibility of witnesses who appeared before it. *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999). The trial court made a factual finding that defendant and trial counsel had discussed the case and the discovery materials, that the strategy of conceding guilt on the lesser charges and attacking the murder charge "was developed with the assistance of [defendant]," and that defendant agreed with the strategy, "didn't object to the strategy," and understood the strategy, which "was confirmed and agreed upon from very early on in [counsel's] representation." Given these findings, we reject defendant's argument that trial counsel impermissibly relied on a defense that defendant had rejected, or that defendant insisted that counsel employ a different strategy. Accordingly, the trial court not abuse its discretion by denying defendant's motion for a new trial on this basis.

### B. FAILURE TO REQUEST A LESSER OFFENSE INSTRUCTION

We agree with defendant that trial counsel was ineffective for not requesting an instruction on involuntary manslaughter as a lesser offense of second-degree murder. The decision whether to request a lesser offense instruction is a matter of trial strategy. *People v Robinson*, 154 Mich App 92, 93-94; 397 NW2d 229 (1986). Both voluntary and involuntary manslaughter are lesser included offenses of murder, distinguished by the element of malice. *People v Mendoza*, 468 Mich 527, 533-534, 540-541; 664 NW2d 685 (2003). Consequently, if a defendant is charged with murder, an instruction for manslaughter must be given upon request if supported by a rational view of the evidence. *Id*. at 541. Manslaughter includes the same elements as second-degree murder, except for malice. *Id*. at 534. As it relates to this case, if a homicide "was committed with a lesser mens rea of gross negligence or an intent to injure, and not malice, it is not murder, but only involuntary manslaughter." *People v Holtschlag*, 471 Mich 1, 21; 684 NW2d 730 (2004). Thus, had an instruction on involuntary manslaughter been requested, defendant would have been entitled to the instruction if a rational view of the evidence supported a finding that Cutting's death was caused by an act of gross negligence or an intent to injure, and not malice.

In this case, the clear defense strategy was to attack the malice element of second-degree murder. At the evidentiary hearing on remand, trial counsel testified that the defense theory of the case was that defendant "[d]idn't act with malice, didn't knowingly . . . believe that what he was doing was likely to cause death or great bodily harm." Counsel acknowledged that manslaughter was consistent with his theory of the case, yet he did not think about it and did not "really consider" it. As defendant notes, the prosecution's expert testified that before the impact, defendant slowed down with an apparent attempt to turn at the intersection, but was traveling too fast. The jury could have rationally found that defendant's behavior was consistent with gross negligence, but did not rise to the level of malice. Despite the defense strategy of attacking the malice element of second-degree murder, by failing to request a manslaughter instruction, counsel deprived the jury of the opportunity to consider a lesser offense that would have allowed it to find that defendant was responsible for Cutting's death, but did not act with malice.

-8-

At the evidentiary hearing, trial counsel explained that he did not "seriously consider" a lesser offense instruction for the murder charge because the case "already had lessors" and he "didn't see a need to add another." This explanation defies logic. The entire defense strategy involved conceding defendant's culpability to a series of less serious offenses, but challenging defendant's culpability for murder, which exposed defendant to a significantly greater penalty. It is well-settled that a decision to forgo a lesser offense instruction and proceed with an "all or nothing defense" can be a legitimate trial strategy. *People v Nickson*, 120 Mich App 681, 687; 327 NW2d 333 (1982). In this case, however, it was not reasonable to employ that strategy with respect to the second-degree murder charge because of the defense strategy of conceding defendant's guilt to the other offenses. Even if the jury had acquitted defendant of murder, defendant would still be subject to lengthy periods of incarceration because of the defense strategy of conceding guilt to the other charges. The second-degree murder charge exposed defendant to a significantly greater penalty, including potential imprisonment for life. MCL 750.317. By not requesting an instruction on involuntary manslaughter as a lesser offense to murder, counsel left defendant exposed to this significantly greater penalty, without the opportunity to have the jury consider an offense that was consistent with the defense theory of the case and which carried a penalty equivalent to the penalties that defendant was already facing for several of the offenses for which the defense was conceding guilt.[1] Under these circumstances, it was not objectively reasonable to forgo a lesser offense instruction on manslaughter merely because defendant had been charged with a series of other lesser offenses.

For these reasons, trial counsel's failure to request the instruction was not objectively reasonable. Having reviewed trial counsel's testimony from the evidentiary hearing, there was no legitimate strategic reason for failing to request the instruction. Also, there is a reasonable probability that, but for counsel's inaction, the result of the proceedings, i.e., defendant's conviction of second-degree murder, would have been different. Accordingly, defendant is entitled to a new trial for this charge on this basis.

## C. FAILURE TO CHALLENGE THE ADMISSIBILITY OF THE URINALYSIS RESULTS

Defendant also faults trial counsel for failing to move to suppress the urinalysis test results. Defendant contends that the relevant statute, MCL 257.625a(6)(e), applies only to blood draws, and not urine, and therefore, his results would not have been admissible. As the prosecutor reasons, even if trial counsel had moved to suppress the results of the urine test and was successful in arguing that MCL 257.625a(6)(e) did not apply, the prosecution could have obtained a search warrant for the results and sought admission under MCL 257.625a(6)(a), which specifically allows the results of chemical testing on urine to be introduced into evidence. See *People v Mayhew*, 236 Mich App 112, 120-121; 600 NW2d 370 (1999). Counsel is not ineffective for failing to advance

---

[1] Like the charges of reckless driving causing death, MCL 257.626(4), first-degree fleeing or eluding a police officer, MCL 257.602a(5), and OWI causing death, MCL 257.625(4), involuntary manslaughter is also punishable by imprisonment for "not more than 15 years." MCL 750.321.

a futile position. *Ericksen*, 288 Mich App at 201. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for a new trial on this basis.[2]

## V. ADMISSION OF EVIDENCE

Defendant submits that the trial court erred by admitting statements made by defendant's female passenger to Officer Smith at the accident scene. Defendant argues that he is entitled to a new trial because the statements were inadmissible hearsay and they violated his constitutional right of confrontation. We disagree.

## A. BACKGROUND

On direct examination, Officer Smith testified that after arriving at the accident scene, he approached the female passenger, who was still seated in defendant's vehicle. The following exchange occurred:

> *Q.* Okay. And what was, what was she acting like?
>
> *A.* She was crying, and shaking, and visibly upset.
>
> *Q.* Okay. And did she say anything to you?
>
> *A.* She did.
>
>        \*   \*   \*
>
> *Q.* Well, Officer, about—you stated that the accident seemed to have just happened, correct?
>
> *A.* Yes.
>
> *Q.* Okay. And do you know how many cars, or trucks, or vehicles, in general, were in the accident?
>
> *A.* There were several. I didn't, I didn't take the time to count vehicles, or radio dispatch. I just wanted 'em to get rescue rolling, and—
>
>        \*   \*   \*
>
> *A.* I did not go over to those vehicles, because there were other people, already assisting, apparently.

---

[2] On remand, defendant withdrew his claim of ineffective assistance of counsel pertaining to the failure to obtain an accident reconstruction expert, and he does not address it in his supplemental brief. Accordingly, defendant failed to demonstrate entitlement to relief on appeal on this basis.

*Q.* Okay. Now, the passenger of the suspect vehicle, you said, she still hadn't gotten out?

*A.* The passenger in the suspect vehicle was still seat belted.

*Q.* And did she say something to you?

*A.* She did.

*Q.* Okay. Now, you said that she was shaking, earlier, correct?

*A.* She was shaking, and crying.

\* \* \*

[The trial court overruled defense counsel's objection.]

*Q.* What did the passenger say to you, at that point?

*A.* The passenger said, *I told him to stop. I told him to stop.* [Emphasis added.]

## B. ANALYSIS

### 1. PRESERVED HEARSAY CLAIM

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *Id*. at 252 (quotation marks and citation omitted.) "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo[.]" *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

Hearsay, which is a statement other than one made by the declarant while testifying at the trial or hearing offered to prove the truth of the matter asserted, is inadmissible at trial unless there is a specific exception allowing its introduction. See MRE 801, MRE 802, and *People v Ivers*, 459 Mich 320, 331; 587 NW2d 10 (1998). The excited utterance exception permits the admission of hearsay statements that (1) arise out of a startling event, and (2) are made while the declarant was under the excitement caused by that event. MRE 803(2); *People v Layher*, 238 Mich App 573, 582; 607 NW2d 91 (1999). The focus of the excited utterance rule is the "lack of capacity to fabricate, not the lack of time to fabricate," and the relevant inquiry is one concerning "the possibility for conscious reflection." *People v Smith*, 456 Mich 543, 550-551; 581 NW2d 654 (1998). The key question is whether the declarant was still under the stress of the event, and the trial court is accorded wide discretion in making that preliminary factual determination. *Id*. at 551-552; see also *Layher*, 238 Mich at 582.

In this case, Officer Smith—the first officer to arrive at the scene—testified that defendant's passenger, the declarant, made the challenged statements to him immediately after the series of accidents. The officer had not asked her any questions. She was a passenger in the truck that had hit two vehicles, causing one of the vehicles to flip over, and causing damage to the vehicle that she was in. At the time of her statements, she was still in the truck wearing her seat belt, and defendant was "laying in the roadway." Thus, the passenger's statement was made after a startling event. Officer Smith also testified that defendant's passenger was visibly upset, shaking, and crying. Thus, there was evidence that she was still under the stress caused by the event when she made the statements to the officer. Because there is an evidentiary basis for finding that defendant's passenger's statements to Officer Smith qualified for admission as excited utterances under MRE 803(2), the trial court did not abuse its discretion by admitting the testimony.

## 2. UNPRESERVED CONSTITUTIONAL CLAIM

Defendant also argues that the passenger's statements were testimonial, and therefore, their admission violated his constitutional right of confrontation. Because defendant did not object on this ground at trial, this issue is unpreserved. We review defendant's unpreserved claim for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999).

"The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination."[3] *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). "A pretrial statement is testimonial if the declarant should reasonably have expected the statement to be used in a prosecutorial manner and if the statement was made under circumstances that would cause an objective witness reasonably to believe that the statement would be available for use at a later trial." *People v Dendel (On Second Remand)*, 289 Mich App 445, 453; 797 NW2d 645 (2010), citing *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004). In *Davis v Washington*, 547 US 813, 826; 126 S Ct 2266; 165 L Ed 2d 224 (2006), the United States Supreme Court explained the distinction between nontestimonial and testimonial statements:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. [*Id*. at 822.]

---

[3] Both the United States and the Michigan Constitutions guarantee a criminal defendant the right "to be confronted with the witnesses against him." *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012); see also US Const, Am VI; Const 1963, art 1, § 20.

The Court also noted, however, that it was only framing the issue in terms of interrogation because of the nature of the cases before it. *Id*. at 822 n 1. It made clear that even "volunteered testimony or answers to open-ended questions" may be testimonial. *Id*.

Although, as plaintiff points out, the declarant was crying and upset and had not been asked any questions by the officer, her statements were arguably more about "describ[ing] past events" than about "meet[ing] an ongoing emergency." *Davis*, 547 US 813 at 826-827 (citation and quotation marks omitted). Again, the declarant told the officer that she told defendant to stop, which was not information that would have assisted in the ongoing emergency. However, even if these statements were testimonial and therefore inadmissible, defendant has failed to establish that any error in admitting them affected the outcome of the trial. *Carines*, 460 Mich at 763-764. Given the overwhelming evidence of defendant's reckless driving before the accident, which included driving at excessive speeds, passing vehicles on the shoulder of a congested freeway, disregarding a red traffic signal, and then entering an intersection in disregard of a stop sign, and the expert testimony that defendant did not attempt to stop his vehicle at the intersection, the declarant's statements that she told defendant to stop would not have caused his convictions. Therefore, defendant is not entitled to relief with respect to this unpreserved issue.

## VI. CONCLUSION

Defendant has established that he was denied the effective assistance of counsel as a result of trial counsel's failure to request a lesser offense jury instruction on involuntary manslaughter. He is entitled to a new trial for the crime of second-degree murder. We reject defendant's remaining claims of error.

Reversed and remanded for a new trial for the offense of second-degree murder. We affirm defendant's remaining convictions and sentences. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron

-13-